UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| OptumHealth Care Solutions, LLC, | Civil File No. Civ. No. -------------- |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| Sports Concussion Institute Global, Inc., | |
| Defendant. | |

Plaintiff OptumHealth Care Solutions, LLC ("Optum") for its claim against Sports Concussion Institute Global, Inc. ("SCI"), states and alleges as follows:

## INTRODUCTION

1. This is an action seeking damages for SCI's breach of its Marketing Agreement with Optum.

## PARTIES

2. OptumHealth Care Solutions, LLC is a Delaware health services and innovation limited liability company and maintains its principle place of business at 11000 Optum Circle, Eden Prairie, MN 55344.  Prior to February 14, 2017, OptumHealth Care Solutions, LLC was OptumHealth Care Solutions, Inc., a Delaware Corporation. OptumInsight, Inc., a Delaware corporation with its principle place of business in Eden Prairie, MN, is the 100% owner and sole member of OptumHealth Care Solutions, LLC.

3. SCI is a California corporation with its principle place of business located at 6101 West Centinela Ave, Suite 211, Culver City, CA 90230.

## JURISDICTION AND VENUE

4. Jurisdiction is proper under U.S.C. § 1332(a)(1) because Optum and SCI are citizens of different states and the amount in controversy is greater than $75,000.

5. Venue is proper under U.S.C. § 1391(b)(3) because the District of Minnesota has personal jurisdiction over SCI and the parties agreed that any action brought pursuant to the underlying contract would be brought in state or federal court in the State of Minnesota.

## STATEMENT OF FACTS

**Optum and SCI Enter into the Marketing Agreement**

6. Optum and SCI entered into the Marketing Agreement (the "Agreement") on October 20, 2016, to establish a preferred relationship in which Optum, with SCI's assistance, would create, own, and manage a nationwide integrated behavioral health network of Providers for the identification and treatment of post-concussion syndrome and related neurobehavioral disorders.

7. Under the Agreement, Optum agreed to provide and execute a marketing plan for SCI as well as pay SCI a set Marketing Fee. In turn, SCI agreed to market and promote the Concussion Provider Connection and Optum's services, and use Optum's marketing materials.

8. The Agreement provides for a revenue sharing arrangement under which SCI agreed to pay Optum a set percentage of its net revenue, referred to as the "Net Margin." SCI owes Optum a higher percentage of its Net Margin until the aggregate total

of SCI's payments to Optum equal the Marketing Fee Optum paid SCI at the outset of the Agreement.

9.      The Agreement provides for an initial term of three years that would automatically renew for one year periods unless otherwise terminated under the termination provisions of the Agreement.

10.     Either party can terminate the Agreement for "Convenience" "at any time by giving at least ninety (90) days prior written notice to the other Party."

11.     In the event that either party terminates the Agreement, the Agreement requires SCI to "immediately pay Optum an early termination fee," which is defined as the amount of the initial Marketing Fee less any Optum Supplement Net Margin Payments.

12.     Optum performed its obligations under the Agreement.

**Optum Terminates the Agreement**

13.     On June 20, 2017, Optum provided notice as required under Section 8.7 of the Agreement that it was terminating the Agreement pursuant to Section 6.2(b) effective September 21, 2017, which was more than 90 days from the date of the letter. Because SCI had not paid Optum any Supplemental Net Margin Payments, SCI was required to repay the full Marketing Fee upon termination.

14.     On August 22, 2017, Optum sent SCI a second letter following up on its June 20, 2017 letter reiterating that the Agreement would terminate effective September 21, 2017. Optum requested that SCI confirm it would remit payment of the Marketing Fee by September 21, 2017.

3

15. On August 28, 2017, Tony Strickland, CEO of SCI, confirmed receipt of the August 22, 2017 letter and stated he would be in touch with Optum.

16. On September 21, 2017, the Agreement was terminated.

17. On November 30, 2017, Optum sent a third letter to SCI regarding the termination of the Agreement and repayment of the Marketing Fee. SCI did not respond.

18. To date, SCI has not paid the amount required under the Agreement nor otherwise substantively responded to any of Optum's letters.

## COUNT I
### Breach of Contract

19. Optum incorporates the allegations in Paragraphs 1-18 as if fully set forth herein.

20. Optum and SCI entered into a valid and enforceable contract on October 20, 2016.

21. Optum performed its obligations under the Agreement.

22. In accordance with the terms of the Agreement, Optum terminated the Agreement on June 20, 2017, effective September 21, 2017.

23. The Agreement requires SCI to repay the Marketing Fee upon Optum's termination.

24. SCI did not repay the Marketing Fee to Optum as required by the Agreement, and SCI is in breach of the Agreement.

25. As a result of SCI's breach, Optum has been injured in an amount greater than $75,000.

## **PRAYER FOR RELIEF**

WHEREFORE, Optum demands judgment against SCI:

A. Awarding Optum damages in excess of $75,000;

B. Awarding Optum any additional compensatory damages resulting from SCI's breach;

C. Awarding Optum costs and, to the extent permissible under applicable law, its attorneys' fees; and

D. Grant all other such relief to Plaintiff as the Court deems just and equitable.

Dated:  March 22, 2018                    DORSEY & WHITNEY LLP

By  */s/ Vanessa J. Szalapski*
Michelle Grant (#0311170)
grant.michelle@dorsey.com
Vanessa J. Szalapski (#0396739)
szalapski.vanessa@dorsey.com
Suite 1500, 50 South Sixth Street
Minneapolis, MN 55402-1498
Telephone:  (612) 340-2600
Facsimile:  (612) 340-2868

*Attorneys for Plaintiff Optum, Inc.*